UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Anytime Fitness, LLC,   File No. 15-cv-4595

          Plaintiff,

    v.   **VERIFIED COMPLAINT**

Jessica Marie Harmon,

          Defendant.

---

Plaintiff Anytime Fitness, LLC for its Complaint against Defendant Jessica Marie Harmon ("Harmon") alleges as follows:

1. Anytime Fitness is a limited liability company organized under the laws of Minnesota, with its principal place of business located at 12181 Margo Avenue South, Hastings, Minnesota 55033.

2. Upon information and belief, Harmon is an individual residing at 808 Dogwood Street, Excelsior Springs, Missouri 64024.

**JURISDICTION AND VENUE**

3. The amount in controversy exceeds $75,000, exclusive of interests and costs, and is between a citizen of Minnesota and citizen of Missouri. The Court therefore has diversity jurisdiction over this case under 28 U.S.C. § 1332(a)(2).

4. The Court may properly exercise personal jurisdiction over Harmon under Sections 18.E and 18.F of the Franchise Agreements entered into between Harmon and her corporate entities, and personally guaranteed by Harmon, which states that any

2

litigation will be venued in Minnesota, the parties consent to personal jurisdiction in courts located in Minnesota, and waive any objections to jurisdiction in Minnesota. Harmon had ample opportunity to review these provisions, consider their consequences in the event of litigation, and agree to be bound by them.

5.   The Court also has personal jurisdiction over Harmon because she carried out a business relationship with Anytime Fitness, a Minnesota company, as described further herein.

6.   The Court further has personal jurisdiction over Harmon because her actions have caused injuries in Minnesota.

7.   Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims presented in this action occurred in Minnesota.

**FACTS**

*The ANYTIME FITNESS® System*

8.   Anytime Fitness owns and licenses a system of operating co-ed fitness facilities, which offer a variety of fitness services under the commercial trade name and service mark ANYTIME FITNESS® (the "ANYTIME FITNESS® System"). The ANYTIME FITNESS® System has over 2,200 operating franchise fitness centers located across the United States and Canada, and over 800 more locations around the world, which are owned and operated by hundreds of franchisees. Most franchised locations have between 500 and 900 members, and many locations have significantly more than 900 members. Franchisees offer Anytime Fitness's members a range of membership contracts, which may vary from month-to-month to multi-year contracts. The typical

membership contract is for one year. Most of Anytime Fitness's members visit the center regularly.

9. Anytime Fitness owns the trademark ANYTIME FITNESS®, (the "Running Man Logo"), and certain other trademarks, trade names, service marks, logos, designs, and commercial systems (collectively, the "Names and Marks"). Anytime Fitness has registered its Names and Marks on the Principal Register of the United States Patent and Trademark Office.

10. Anytime Fitness has developed the ANYTIME FITNESS® System, under which it licenses its franchisees to use the Names and Marks. Anytime Fitness has expended substantial sums of money and other resources in developing, promoting, and establishing the ANYTIME FITNESS® System. As a result of Anytime Fitness's efforts, customers have come to understand Anytime Fitness's Names and Marks as unique, distinctive symbols for the operation of Anytime Fitness's franchised locations and the services they offer.

11. Members are drawn to Anytime Fitness's franchised locations because of the Names and Marks that identify a high level of quality and service, the reciprocity members have with 3,000 other Anytime Fitness clubs worldwide, access to Anytime Fitness's proprietary mobile application, and other benefits of being one of Anytime Fitness's members.

*Harmon Executes the Franchise Agreements and Personal Guaranties*

12.     On February 14, 2011, Anytime Fitness and Robert J. Harmon, Mark T. Harmon, and Harmon (collectively "the Harmons") entered into a Franchise Agreement (the "Richmond Franchise Agreement") for the continued operation of an Anytime Fitness® center located at 218 South Thornton Street, Richmond, Missouri (the "Richmond Anytime Fitness Center").  A true and correct copy of the Richmond Franchise Agreement is attached as Exhibit A.

13.     Section 2.A of the Richmond Franchise Agreement provides for a term of six years, with the Harmons having the option to renew the Richmond Franchise Agreement for an additional five-year term.  Anytime Fitness and the Harmons entered into three separate Amendments to the Richmond Franchise Agreement concerning required upgrades to the fitness center location and the precise location of the Richmond Anytime Fitness Center.  True and correct copies of the three Amendments to the Richmond Franchise Agreement are attached as Exhibit B.

14.     When the Harmons entered into the Richmond Franchise Agreement, each executed a Personal Guaranty and Agreement to be Bound Personally by the Terms and Conditions of the Franchise Agreement (the "Richmond Personal Guaranty"), attached to the Richmond Franchise Agreement, agreeing that each would "become surety and guarantor for the payment of all amounts and the performance of the covenants, terms and conditions in the [Franchise] Agreement" and "be personally bound by each and every condition and term contained in the [Franchise] Agreement."

15. On August 23, 2012, Anytime Fitness and Harmon Fitness Chillicothe, LLC ("HFC") entered into a Franchise Agreement (the "Chillicothe Franchise Agreement") for the continued operation of an Anytime Fitness® center located at 2348 West Business 36 Highway, Chillicothe, Missouri (the "Chillicothe Anytime Fitness Center"). A true and correct copy of the Chillicothe Franchise Agreement is attached as Exhibit C.

16. Section 2.A of the Chillicothe Franchise Agreement provides for a term of six years, with HFC having the option to renew the Chillicothe Franchise Agreement for an additional five-year term. Anytime Fitness and HFC entered into an Amendment to the Chillicothe Franchise Agreement concerning required upgrades to the Chillicothe Anytime Fitness Center. A true and correct copy of the Amendment to the Chillicothe Franchise Agreement is attached as Exhibit D.

17. Harmon executed the Chillicothe Franchise Agreement and the Amendment to the Chillicothe Franchise Agreement as the Vice-President of HFC.

18. When HFC entered into the Chillicothe Franchise Agreement, the Harmons each executed a Personal Guaranty and Agreement to be Bound Personally by the Terms and Conditions of the Franchise Agreement (the "Chillicothe Personal Guaranty"), attached to the Chillicothe Franchise Agreement, agreeing that each would "become surety and guarantor for the payment of all amounts and the performance of the covenants, terms and conditions in the [Franchise] Agreement" and "be personally bound by each and every condition and term contained in the [Franchise] Agreement."

6

19. On May 23, 2014, Anytime Fitness and Harmon Fitness, LLC ("HF") entered into a Franchise Agreement (the "Excelsior Springs Franchise Agreement") for the continued operation of an Anytime Fitness® center located at 959 North Jesse James Road, Excelsior Springs, Missouri (the "Excelsior Springs Anytime Fitness Center"). A true and correct copy of the Excelsior Springs Franchise Agreement is attached as Exhibit E.

20. Section 2.A of the Excelsior Springs Franchise Agreement provides for a term of six years, with HF having the option to renew the Excelsior Springs Franchise Agreement for an additional five-year term. Anytime Fitness and HF entered into an Amendment to the Excelsior Springs Franchise Agreement concerning required upgrades to the Excelsior Springs Anytime Fitness Center. A true and correct copy of the Amendment to the Excelsior Springs Franchise Agreement is attached as Exhibit F.

21. Harmon executed the Excelsior Springs Franchise Agreement and the Amendment to the Excelsior Springs Franchise Agreement as the vice-president of HF.

22. When HF entered into the Excelsior Springs Franchise Agreement, the Harmons each executed a Personal Guaranty and Agreement to be Bound Personally by the Terms and Conditions of the Franchise Agreement (the "Excelsior Springs Personal Guaranty"), attached to the Excelsior Springs Franchise Agreement, agreeing that each would "become surety and guarantor for the payment of all amounts and the performance of the covenants, terms and conditions in the [Franchise] Agreement" and "be personally bound by each and every condition and term contained in the [Franchise] Agreement."

*Harmon Obtains the Benefits of the ANYTIME FITNESS® System Under the Terms of the Franchise Agreements*

23.     As an Anytime Fitness® franchisee and personal guarantor for over four years, Harmon obtained, among other things, the use of Anytime Fitness's Names and Marks, marketing and advertising services, training programs, highly confidential proprietary manual and other materials, including computer software, to be used in connection with the operation of the fitness center.

24.     Harmon also received, as an Anytime Fitness® franchisee, the information and know-how to get her fitness business up and running, and then to successfully operate it, including: what equipment to purchase, club layout, the "menu" of services offered and the recommended pricing of those services, access to Anytime Fitness's suppliers, training in the methods of operating a co-ed fitness business, Anytime Fitness's membership agreement, which Anytime Fitness prepared for distribution exclusively to Anytime Fitness® franchisees, training in the promotion and sales of fitness club memberships, access to Anytime Health, which is an interactive health website provided to Anytime Fitness's members, access to comprehensive security system and related technology that allows for proper security for a co-ed fitness business, and numerous other trade practices of Anytime Fitness and the ANYTIME FITNESS® System.

25.     Another feature offered by Anytime Fitness exclusively to its franchisees is the internet-based "Dashboard."  The Dashboard provides a means for Anytime Fitness to quickly communicate with its franchisees and is now the primary means by which Anytime Fitness does so.  The Dashboard allows franchisees the opportunity to instantly

share ideas with each other without access to their ideas by competitors. The Dashboard contains Anytime Fitness's operations manual and other propriety information, including information relating to personal training programs, virtual roundtables on such topics as getting started, club operations, marketing, club culture, corporate partnerships, customer service standards, competitors, technical issues, "Ask Corporate," Anytime Health, personal training, and the Franchise Advisory Council, which is a committee comprised of Anytime Fitness's franchisees.

26. Harmon had the benefit of learning the entire ANYTIME FITNESS® System of methods, procedures, standards, specifications, and the trademarks within the model that Anytime Fitness created.

27. Third parties who have tried to adopt Anytime Fitness's businesses model have added services or space that add expense and destroy the model, including features such as pools, saunas, and daycare centers. The ANYTIME FITNESS® System works, and its franchisees learn the ANYTIME FITNESS® System, and therefore have significant advantages over other competitors. Anytime Fitness teaches its franchisees, just as it taught Harmon, how to open and operate a successful fitness center.

28. As set forth in the Franchise Agreements, Harmon acknowledged that the information relating to the ANYTIME FITNESS® System is confidential. Section 10.A of the Franchise Agreements states:

> You acknowledge that all the information you have now or obtain in the future concerning the System and the concepts and methods of promotion franchised hereunder is derived from us pursuant to this Agreement, and that you will treat such information in confidence. You agree never to, directly

>or indirectly, engage in or abet the misappropriation . . . or the disclosure, divulgence, or distribution of all or any part of the System . . . . You will disclose such confidential information only to such of your employees as must have access to it in order to operate your Anytime Fitness Center and use it only for the operation of your Anytime Fitness Center. At our request, you will be required to deliver to us confidentiality agreements and non-compete agreements in a form satisfactory to us from your owners, the spouses of your owners, and your employees. The scope of the confidentiality agreements shall be consistent with the provisions of this Section 10.A., and the scope of the noncompete agreements shall be consistent with the provisions of Section 17 of this Agreement.

29. In light of the confidential information that Anytime Fitness shared with Harmon, in addition to other valuable services and consideration provided by Anytime Fitness, she agreed to not compete with Anytime Fitness during the term of any of the Franchise Agreements. Section 17.A of the Franchise Agreements provides:[1]

>During Term. You will not, directly or indirectly, during the term of this Agreement, on your own account or as an employee, consultant, partner, officer, director, shareholder or member of any other person, firm, entity, partnership, corporation or company, own, operate, lease, franchise, engage in, be connected with, have any interest in, or assist any person or entity engaged in owning, operating, or managing any other fitness center, wherever located, whether within the Protected Territory or elsewhere.

30. Harmon further agreed not to compete with Anytime Fitness for a period of two years after the termination of the Franchise Agreements. Section 17.B of the Franchise Agreements provides:

---

[1] Section 22 of the Excelsior Springs Franchise Agreement amends the Richmond and Chillicothe Franchise Agreements concerning the non-compete covenants and provides that Section 17 of the Excelsior Springs Franchise Agreement controls relative to both in-term and post-term covenants not-to-compete.

10

>After Expiration, Termination, or Transfer. You will not, directly or indirectly for a period of two (2) years after the transfer by you, or the expiration or termination of this Agreement, on your own account or as an employee, consultant, partner, officer, director, shareholder, lender, or joint venturer of any other person, firm, entity, partnership, corporation or company, own, operate, lease to or lease from, franchise, conduct, engage in, be connected with, have any interest in or assist any person or entity engaged in any fitness center, which is located within the Protected Territory or within a ten (10) mile radius of any Anytime Fitness center, wherever located, whether within the Protected Territory or elsewhere; provided, however, that in metropolitan areas having a population of more than 50,000 persons, the forgoing ten (10) mile radius will be limited to a radius of five (5) miles from any Anytime Fitness center (including the one you formerly operated under this agreement).

31. Harmon agreed to a Protected Territory including the area within a respective three-mile radius of the Richmond, Chillicothe and Excelsior Springs Anytime Fitness Locations.

*Harmon Becomes Involved With Another Competitive Gym Under the Name "All Strong Fitness"*

32. In December 2015, Anytime Fitness learned that Harmon has become involved with another competitive gym – All Strong Fitness. More specifically, Harmon has removed the equipment from the Chillicothe Anytime Fitness Center and opened a business called All Strong Fitness at 720 Washington Street, Chillicothe, Missouri.[2]

33. Numerous photographs of the All Strong Fitness location and Harmon are displayed on All Strong Fitness and Harmon's Facebook pages. A nonexclusive set of true and correct copies of these photographs are attached as Exhibit G.

---

[2] Although the in-term non-compete covenant is not limited by a mileage radius, the All Strong Fitness location is located approximately 1.7 miles from the Chillicothe Anytime Fitness location.

34. The All Strong Fitness center has a number of features that resemble the ANYTIME FITNESS® System and is a directly competing fitness center. Each provides health and wellness services, access to personal training services, and advertises as convenient, affordable, and fun.

35. Harmon is using confidential information misappropriated from the ANYTIME FITNESS® System in the operation of All Strong Fitness.

36. Harmon was well aware of her obligation not to compete with Anytime Fitness. Section 17.A of the Franchise Agreements makes her agreement not to compete during the term of the Franchise Agreement abundantly clear.

37. In Section 17.E of the Franchise Agreements, Harmon agreed that Anytime Fitness would have the right to petition the Court for injunctive relief to enforce the provisions of the Franchise Agreements relating to her covenants not to compete.

38. In Section 18.A of the Franchise Agreement, Harmon agreed that if Anytime Fitness is "successful in obtaining an injunction, or any other judicial relief or order . . . [they] will pay [Anytime Fitness] an amount equal to all of [Anytime Fitness's] costs of prosecuting and/or defending the action, including reasonable attorneys' fees, costs of investigation, and court courts, and other litigation [] expenses."

## COUNT I
### Breach of Contract

39. Under the terms of the Franchise Agreements and Personal Guaranties, Harmon is bound by the non-compete covenants in Section 17 of the Franchise Agreements.

12

40. Section 17 the Franchise Agreements, which prohibits Harmon from competing with Anytime Fitness, is reasonable, necessary, and enforceable to protect Anytime Fitness's legitimate business interests.

41. Harmon's actions described above constitute a breach of the Franchise Agreements.

42. Anytime Fitness's goodwill and relationships with customers and potential customers have been diverted or misappropriated in violation of the Franchise Agreements.

43. The Franchise Agreements provide for the recovery of damages, injunctive relief, and attorneys' fees upon its successful enforcement by Anytime Fitness.

44. As a direct and proximate cause of the breaches of contract by Harmon, Anytime Fitness seeks damages in an amount to be determined at trial but in excess of $75,000.

45. As a direct and proximate cause of the breaches of Harmon, Anytime Fitness also seeks temporary and permanent injunctive relief.

## COUNT II
### Misappropriation of Trade Secrets

46. Over the course of Harmon's franchise relationship with Anytime Fitness, she had access to Anytime Fitness's confidential information and trade secrets, including but not limited to the confidential information related to the ANYTIME FITNESS® System, and the information described.

47. Such information derives independent economic value from not being generally known, or not being readily ascertainable through proper means, by others.

48. Anytime Fitness has taken reasonable steps to safeguard such confidential and proprietary information.

49. Harmon has acted and intends to continue to act to misappropriate trade secrets of Anytime Fitness. Her actions violate Minnesota's Uniform Trade Secrets Act as codified in Minn. Stat. ch. 325C.

50. As a result of Harmon's misappropriation, Anytime Fitness is entitled to injunctive relief under Minn. Stat. § 325C.02(a), which prohibits her disclosure of such information, and entitles Anytime Fitness to damages in an amount to be determined, plus compensatory and exemplary damages, in an amount in excess of $75,000 as set forth in Minn. Stat. §§ 325C.03 and 325C.04.

### COUNT III
### Tortious Interference

51. Anytime Fitness and its affiliates had a reasonable expectation of continued business relations with customers that joined the ANYTIME FITNESS® System.

52. Anytime Fitness and its affiliates had a reasonable expectation of business relations with customers that may join the ANYTIME FITNESS® System.

53. Harmon is aware that Anytime Fitness had agreements and prospective economic relationships with customers. With full knowledge of those agreements and prospective economic relationships, Harmon has undertaken steps to tortuously and purposely induce persons who joined the ANYTIME FITNESS® System to terminate

14

their agreements and prospective economic relationships with Anytime Fitness and its affiliates.

54. The aforementioned interference is wrongful and unjustified.

55. As a direct and proximate cause of the wrongful conduct, Anytime Fitness seeks damages including attorneys' fees, in an amount in excess of $75,000, the precise amount to be determined at trial.

## COUNT IV
## Unfair Competition

56. Harmon's wrongful actions and omissions as described above constitute unfair competition.

57. As a result of Harmon's wrongful actions and omissions, Anytime Fitness has been and continues to be damaged.

58. Upon information and belief, Harmon committed these acts knowingly, maliciously, willfully, and intentionally.

59. As a result of Harmon's unfair competition, she should be ordered to disgorge all profits made by and as a result of her wrongful actions and omissions, and Anytime Fitness should be awarded all losses and damages it has suffered as a result of Harmon's wrongful conduct, the precise amount to be determined at trial but in excess of $75,000.

## COUNT V
## Unjust Enrichment

60. Harmon has received a benefit from Anytime Fitness by using Anytime Fitness's confidential and proprietary information and by trading upon Anytime Fitness's goodwill while having involvement with All Strong Fitness centers, and being otherwise wrongfully involved with the All Strong Fitness centers.

61. As a result of her wrongful conduct, Harmon has been unjustly enriched such that it would be morally wrong for her to be permitted to enrich herself at the expense of Anytime Fitness.

62. As a result of Harmon's unjust enrichment, she should be ordered to disgorge all profits made by and as a result of her misappropriation of Anytime Fitness's confidential information, and Anytime Fitness should be awarded all losses and damages it has suffered as a result of the wrongful conduct in an amount to be determined at trial, but in excess of $75,000.

## COUNT VI
## Injunctive Relief

63. Harmon's conduct in violation of her non-compete covenants is causing serious and irreparable injury to Anytime Fitness and, unless enjoined, her conduct will continue to injure Anytime Fitness's business, goodwill, and customer relations.

64. Anytime Fitness has no adequate remedy at law to protect itself from the continuing damage and injury which has been or will be caused by Harmon. Anytime Fitness has been and will continue to be subject to irreparable harm if Harmon is permitted to continue violating the Franchise Agreements.

65. Anytime Fitness has been and will continue to be subject to irreparable harm if Harmon is permitted to continue being involved with and employed by All Strong Fitness centers.

66. Anytime Fitness seeks temporary and permanent injunctive relief in order to prevent irreparable injury.

## COUNT VII
## Attorneys' Fees and Costs

67. Under Section 18.A of the Franchise Agreements, Harmon is obligated to pay all costs and attorneys' fees incurred by Anytime Fitness in pursuing its rights and remedies under the Franchise Agreements.

68. Anytime Fitness has incurred and will continue to incur attorneys' fees and costs and is entitled to recover all amounts incurred in prosecuting this action.

## PRAYER FOR RELIEF

WHEREFORE, Anytime Fitness asks that the Court enter judgment against Jessica Marie Harmon as follows:

1. For an award of damages in an amount to be determined at trial but in excess of $75,000;

2. For injunctive relief precluding dissemination or other and misuse of Anytime Fitness's confidential information, including but not limited to use in the operation of any other competitive fitness center;

3. For injunctive relief enjoining Jessica Marie Harmon from violating her covenants not to compete;

4. For prejudgment interest on all damages awarded;

5. For Anytime Fitness's attorneys' fees, costs, and disbursements; and

6. For such other and further relief as the court may deem just and equitable.


Dated: December 30, 2015            s/ James M. Susag
                                    James M. Susag (261038)
                                    Inga K. Schuchard (0395801)
                                    Larkin Hoffman Daly & Lindgren Ltd.
                                    8300 Norman Center Drive
                                    Suite 1000
                                    Minneapolis, MN 55437
                                    (952) 835-3800
                                    jsusag@larkinhoffman.com
                                    ischuchard@larkinhoffman.com

                                    *Attorneys for Plaintiff Anytime Fitness, LLC*

# **VERIFICATION**

STATE OF MINNESOTA )
                   )ss.
COUNTY OF DAKOTA   )

I, Jennifer Yiangou, am the Vice President of Operations for Anytime Fitness, LLC. I have read the foregoing Verified Complaint, know its contents, and believe the same to be true and correct, except as to such matters stated upon information and belief, and as to such matters I believe them to be true. I hereby verify the above Verified Complaint.

s/ Jennifer Yiangou
Jennifer Yiangou

Subscribed and sworn to before me
This 28th day of December, 2015.

s/ Chelsea M. Nadeau
Notary Public

My Commission Expires January 31, 2019

4831-8417-3612, v. 1